# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

**WILD WATERSHED,** *et al.*,

      **Plaintiffs,**

**v.**                                    **No. 18 CV 486 JAP/SCY**

**SANFORD HURLOCKER, District
Ranger, Santa Fe National Forest,** *et al.*,

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

Plaintiffs Wild Watershed, Multiple Chemical Sensitivities Task Force, Dr. Ann McCampbell, and Jan Boyer (collectively, Plaintiffs) have challenged the decisions of the United States Forest Service (USFS) approving two projects in the Santa Fe National Forest (SFNF), the Hyde Park Wildland Urban Interface Project (Hyde Park Project) and the Pacheco Canyon Forest Resiliency Project (Pacheco Canyon Project).[1] Plaintiffs request judicial review under the Administrative Procedures Act (APA), 5 U.S.C. §§ 701 et seq., bringing their claims against federal Defendants Sanford Hurlocker, a District Ranger for the SFNF; James Melonas, the Supervisor of the SFNF; Cal Joyner, the Regional Forester for the USFS Southwest Region; and Victoria Christiansen, the Chief of the USFS (collectively, Defendants). Defendants are sued solely in their official capacities.

On October 5, 2018, Defendants provided the Court with the final administrative records for the Hyde Park Project and the Pacheco Canyon Project.[2] Plaintiffs' challenge to the agency

---

[1] *See* FIRST AMENDED COMPLAINT (Doc. 6) (Complaint).
[2] *See* FEDERAL DEFENDANTS' NOTICE OF LODGING FINAL ADMINISTRATIVE RECORDS (Doc. 25).

actions is now fully briefed,[3] and the Court has reviewed the briefing, the administrative records,[4] and the relevant law. Concluding that Defendants did not act arbitrarily, capriciously, or contrary to law, the Court will enter judgment for Defendants affirming the administrative decisions and will dismiss Plaintiffs' claims.

## I.     BACKGROUND

The Hyde Park Project and the Pacheco Canyon Project are both forest health projects in which the USFS proposes to use thinning and prescribed burning to reduce the risks posed by disease, insect infestation, and catastrophic wildfire in the project areas. HP003526-003528; PC001238-001240. These projects are part of a larger strategy to restore fire resiliency to forest lands by reintroducing fire as a forest management tool, rather than endeavoring to suppress all forest fires. HP00164; HP003526; PC000099; PC001238. Due to decades of fire suppression policies, the project areas are now overgrown with densely packed small diameter trees, many of which are stunted and diseased because they have grown in shade. HP003526-003527; PC000992; PC001238. These trees are more vulnerable to insect infestations and disease outbreaks. HP003437; HP003527; PC001238-001239. They also contribute to an increased risk for high-intensity fire because they provide fuel ladders that carry ground fire up into the tree canopy, where it may become a more severe crown fire. HP003437; HP003527; PC001238-001239. By reducing the tree density through thinning and prescribed low-intensity burning, the USFS hopes to increase the health of the remaining trees, encouraging them to grow larger and become more resilient. HP003439-003443; HP003527-003528; PC001201-001204; PC001239-

---

[3] *See* PLAINTIFFS' *OLENHOUSE* BRIEF (Doc. No. 29); FEDERAL DEFENDANTS' RESPONSE BRIEF ON THE MERITS (Doc. 35); PLAINTIFFS' REPLY BRIEF (Doc. 41).

[4] In the Olenhouse Brief, Plaintiffs relied on materials outside the administrative records and asked the Court to consider this extra-record evidence. However, the Court determined that consideration of the extra-record evidence was not appropriate. *See* Memorandum Opinion and Order addressing FEDERAL DEFENDANTS' MOTION AND MEMORANDUM TO STRIKE PLAINTIFFS' EXTRA-RECORD MATERIALS (Doc. 36) (Motion to Strike), filed contemporaneously with this decision.

001240. The projects are also expected to improve habitat diversity and sustainability by providing space for the reintroduction of more fire-tolerant species that have been suppressed by the unnatural overgrowth. HP003439-003443; HP003527-003528; PC001201-001204; PC001239-001240.

The Hyde Park Project and the Pacheco Canyon Project are located within SFNF lands that were designated by the Secretary of Agriculture on May 20, 2014 as insect and disease treatment areas under 16 U.S.C. § 6591a(b), part of the 2014 Farm Bill amendment to the Healthy Forests Restoration Act (HFRA), 16 U.S.C. §§ 6501-6591b. Once a treatment area has been designated under § 6591a(b), the USFS is authorized to "carry out priority projects on Federal lands in the areas designated under subsection (b)-- (A) to reduce the risk or extent of, or increase the resilience to, insect or disease infestation; or (B) to reduce hazardous fuels." § 6591a(d). Relying on this statutory authority, the USFS approved the Hyde Park Project on March 21, 2018, and the Pacheco Canyon Project on June 1, 2018. HP003528-003531; PC001240-001243.

The decisions to approve the projects were made after scoping processes involving notice and public comment. HP003529-003530; PC001242. However, the USFS did not prepare an Environmental Assessment (EA) or Environmental Impact Statement (EIS) for either project. HP003528; PC001240. Instead, the USFS concluded that documentation in an EA or EIS was not required because the actions were categorically excluded from the requirements of the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321-4370h, under 16 U.S.C. § 6591b. Plaintiffs assert that the decisions to designate the treatment areas and approve the projects were arbitrary, capricious, and contrary to law because the USFS failed to consider the foreseeable cumulative direct and indirect impacts of the actions and failed to consider all of the

relevant factors and follow all of the required procedures when making the decisions. Additionally, Plaintiffs contend that the projects do not meet the statutory requirements of the HFRA. They ask the Court to set aside the USFS decisions and enjoin implementation of the projects until the USFS prepares a programmatic EIS under NEPA.

## II.     STANDARD OF REVIEW

Plaintiffs claim that in designating treatment areas and approving the Hyde Park Project and the Pacheco Canyon Project, the USFS violated NEPA and the HFRA, as amended by the 2014 Farm Bill.[5] The Court has jurisdiction over this suit under 28 U.S.C. § 1331 because it arises under the federal laws of the United States. Venue is proper in this district under 28 U.S.C. § 1391(e) because the claims involve a dispute over management of the SFNF, which is situated in this district. Plaintiffs and one or more of Defendants reside in the district, and the contested decision-making process took place in this district. Additionally, Plaintiffs' uncontested statements of aesthetic, recreational, and procedural injuries, allegedly caused by the USFS decisions and redressable through this lawsuit, have adequately established Plaintiffs' standing to bring their claims. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000) ("[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.").

---

[5] Plaintiffs' Complaint also asserts violations of the National Forest Management Act and the Wilderness Act, but Plaintiffs failed to brief these claims. "Arguments inadequately briefed in the opening brief are waived." *Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1087 (10th Cir. 2006) (internal quotation marks omitted); *see also* Fed. R. App. P. 28(a).

However, as a challenge to final agency action, Plaintiffs' claims are reviewable only under the APA. *See Wyoming v. U.S. Dep't of Agric.*, 661 F.3d 1209, 1226 (10th Cir. 2011) (no private right of action under NEPA); *Native Ecosystems Council v. Erickson*, 330 F.Supp.3d 1218, 1228 (D. Mont. 2018) (no private right of action under NEPA or the HFRA). "Under the APA, [the Court] cannot set aside an agency decision unless it fails to meet statutory, procedural or constitutional requirements, or unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Sac & Fox Nation v. Norton*, 240 F.3d 1250, 1260 (10th Cir. 2001) (citing 5 U.S.C. § 706(2)(A)-(D)). A decision is "arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

"The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Id.* "[T]he agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Id.* (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). However, the Court will "'accord agency action a presumption of validity,' and 'the burden is on the petitioner to demonstrate that the action is arbitrary and capricious.'" *Wyoming*, 661 F.3d at 1227 (quoting *Copar Pumice Co. v. Tidwell*, 603 F.3d 780, 793 (10th Cir. 2010)). "The deference [the Court will] give agency action is especially strong where the challenged decisions involve technical or scientific matters within

the agency's area of expertise." *San Juan Citizens Alliance v. Stiles*, 654 F.3d 1038, 1045 (10th Cir. 2011) (internal quotation marks omitted).

## III. DISCUSSION

Plaintiffs challenge both the 2014 designation of SFNF land under § 6591a(b) and the subsequent approvals of the Hyde Park Project and the Pacheco Canyon Project under § 6591a(d) and § 6591b(a)-(b). Plaintiffs assert that both the designation and the project approvals were in violation of NEPA, and that the projects also violate the old-growth standards and scientific requirements of the HFRA.

### A. Designation of Treatment Areas

As an initial matter, Plaintiffs argue that the May 20, 2014 designation of SFNF lands under § 6591a(b) of the HFRA was a discretionary act that required NEPA analysis as to its foreseeable cumulative impacts, even before the USFS consideration of the specific projects in Hyde Park and Pacheco Canyon. Olenhouse Br. at 7-8. Plaintiffs contend that the designation would obviously lead to treatments that would affect the environment, and therefore that it qualifies as a "major federal action" that requires the USFS to perform a programmatic impact analysis under NEPA. *Id.* Plaintiffs maintain that the failure of the USFS to conduct NEPA analysis before making the designation is "a violation of law that taints the whole program." *Id.* at 8.

NEPA requires an EIS for "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(C). An EIS must "provide full and fair discussion of significant environmental impacts and . . . inform decisionmakers and the public of the reasonable alternatives which would avoid or minimize adverse impacts or enhance the quality of the human environment." 40 C.F.R. § 1502.1. The EIS is to "focus on significant

environmental issues and alternatives[,]" "be supported by evidence that the agency has made the necessary environmental analyses[,]" and "be used by Federal officials in conjunction with other relevant material to plan actions and make decisions." *Id.*

"Under NEPA, an EIS must analyze not only the direct impacts of a proposed action, but also the indirect and cumulative impacts of past, present, and reasonably foreseeable future actions[.]" *Wyoming*, 661 F.3d at 1251 (internal quotation marks omitted). "The types of impacts that must be considered include 'ecological (such as the effects on natural resources and on the components, structures, and functioning of affected ecosystems), aesthetic, historic, cultural, economic, social, or health [effects].'" *Id.* (quoting 40 C.F.R. § 1508.8). However, NEPA does not require the USFS to "speculate about the possible effects of future actions that may or may not ensue." *Id.* at 1253 (internal quotation marks omitted).

Defendants argue that the designation of SFNF lands under § 6591a(b) was not a "major Federal action[] significantly affecting the quality of the human environment," 42 U.S.C. § 4332(C), because it was essentially a mapping exercise that categorized forest health to facilitate further evaluation of certain areas. Resp. at 11. The designation did not authorize any projects, did not commit any resources, and did not have any concrete impacts on the environment that could have been meaningfully evaluated at that time. *Id.* at 15. Consequently, Defendants contend that the designation did not trigger any requirement for USFS to prepare an EIS or an EA under NEPA.

It appears that neither the Tenth Circuit Court of Appeals nor any other circuit court has considered this specific issue, but the district courts that have addressed the application of NEPA to a designation under § 6591a(b) have all concluded that no environmental analysis is required prior to the designation. In *Center for Biological Diversity v. Ilano*, 261 F.Supp.3d 1063, 1066

(E.D. Cal. 2017), the plaintiffs challenged the USFS decision to designate 5.3 million acres of national forest land in California as landscape-scale treatment areas under § 6591a(b) without first conducting NEPA analysis. The United States District Court for the Eastern District of California found that the designation had "only potential or contingent effects on the environment" such that it "says nothing about the projects that will be conducted within those areas." *Ilano*, 261 F.Supp.3d at 1066-67. The designation did not "establish any goals, standards, or guidelines for the area[,]" and did not mandate that any treatment would occur. *Id.* Instead, it "merely ma[de] any disease mitigation projects within the area potentially eligible for completion without a NEPA analysis and, even then, only if the requirements for a categorical exclusion are met." *Id.* at 1067. Consequently, "the area designation did not create activities which impact the physical environment[, and] . . . any potential effects of the area designation cannot be meaningfully evaluated." *Id.* (internal quotation marks omitted).

Additionally, the District Court for the Eastern District of California found that inferring a requirement for NEPA review of an area designation would frustrate the purpose of the 2014 Farm Bill amendment to the HFRA, which was designed to create an expedited process for insect and disease treatment. *Id.* In its original form, the HFRA directed the USFS to implement hazardous fuel reduction projects "[a]s soon as practicable" on land threatened by disease or insects, but it also required the USFS to comply with NEPA by creating an EIS or EA for each project. §§ 6512(a), 6514(a)-(b); *see also WildWest Institute v. Bull*, 547 F.3d 1162, 1165-66 (9th Cir. 2008). In 2014 the HFRA was amended to exempt projects within designated areas from this lengthy NEPA review if they met certain requirements, because the previous system had not been responsive enough to the speed and impact of insect infestations. *Ilano*, 261 F.Supp.3d at 1065. The *Ilano* Court considered it "implausible that Congress would involuntarily create a

glaring loophole that would undermine the efficacy of the expedited process it adopted." *Id.* at 1067 (internal quotation marks omitted). In light of congressional intent and the impracticability of meaningful review at the designation stage, the District Court for the Eastern District of California concluded that the designation under § 6591a(b) without prior NEPA analysis was not contrary to law. *Id.* at 1068.

In *Native Ecosystems Council v. Erickson*, 330 F.Supp.3d 1218, 1235 (D. Mont. 2018), the United States District Court for the District of Montana similarly concluded that a designation of land under § 6591a(b) did not trigger NEPA review because it was not a final agency action involving a commitment of resources and it did not authorize any specific projects. At the time of the designation, any potential projects were hypothetical, speculative, and not capable of being meaningfully reviewed. *Id.* Further, the individual projects would be required to meet statutory conditions and would be subject to NEPA challenges once their details had been determined. *Id.* The Court found that an EIS would serve no purpose since the designation had only potential effects on the environment, and consequently it concluded that NEPA did not apply. *Id.* It later reiterated this decision in *Native Ecosystems Council v. Marten*, CV 17-153-M-DWM, 2018 WL 6046472, *4 (D. Mont. Nov. 19, 2018), relying on *Erikson* to deny the plaintiffs' NEPA challenge to a § 6591a(b) designation.

Plaintiffs' reliance on *Sierra Club v. Bosworth*, 510 F.3d 1016, 1027-28 (9th Cir. 2007), is misplaced. *Bosworth* discussed the importance of cumulative impact analysis before an agency promulgates a new categorical exclusion from the EA and EIS requirements of NEPA. A categorical exclusion is defined as a category of actions having no significant individual or cumulative effect on the environment. 40 C.F.R. § 1508.4. *Bosworth* held that an analysis of cumulative impacts was required before making such a finding. 510 F.3d at 1030. However,

*Bosworth* does not address a designation under § 6591a(b), so is irrelevant to the issues raised by Plaintiffs here.

The Court agrees with the District Courts in Montana and the Eastern District of California that the designation of SFNF lands under § 6591a(b) was not subject to NEPA requirements. The designation itself does not significantly affect the quality of the human environment because it does not have any concrete physical effects at all. Although a designation may make it more likely that a treatment project will be carried out and could potentially be excluded from NEPA review, there is no way to evaluate the impacts of such hypothetical projects at the designation stage. The designations apply to landscape-scale areas, which are much larger than the area of any potential treatment project that could be excluded from NEPA review. *See Idaho Sporting Congress, Inc. v. Rittenhouse*, 305 F.3d 957, 973-74 (9th Cir. 2002) (landscape-scale analysis covers a large area); § 6591b(c)(1) (treatment project area may not exceed 3000 acres). Additionally, projects excluded from NEPA requirements under § 6591b(a) must meet other statutory criteria, such as location in a wildland-urban interface or on land with a certain amount of change to a particular set of historical fire conditions. *See* §§ 6591b(c)(2), 6511(4)-(5), (8)-(10). Accordingly, most of the designated land may not ever undergo treatment, and at the time of designation it cannot be determined which parts will be treated and what the effects of that treatment may be. The Court therefore concludes that the designation under § 6591a(b) did not trigger NEPA requirements for environmental review, and it will dismiss Plaintiffs' claims as to the § 6591a(b) designation.

**B.    Approval of Hyde Park Project and Pacheco Canyon Project**

Plaintiffs maintain that even if the designation did not require NEPA review, the approval of the specific treatment projects in Hyde Park and Pacheco Canyon did require NEPA review.

They further assert that the USFS failed to comply with all statutory requirements and properly consider all relevant factors in reaching its decisions.

### 1.    Categorical Exclusion from NEPA requirements

Treatment projects in areas designated under § 6591a(b) that meet certain statutory criteria "may be . . . considered an action categorically excluded from the requirements of [NEPA.]" § 6591b(a)(1). A project that falls within a categorical exclusion does not require an EA or an EIS because the category has already been found to have no significant individual or cumulative effects on the environment. 40 C.F.R. § 1508.4. However, when a categorical exclusion is adopted by an agency, each specific action proposed within that category must still be reviewed "for extraordinary circumstances in which a normally excluded action may have a significant effect." *Id.*

Plaintiffs argue that as to the Hyde Park Project and the Pacheco Canyon Project, the USFS was required to conduct extraordinary circumstances review that needed to include (1) consideration of potential cumulative impacts from treatment across the entire fireshed; and (2) documentation of the reasons why the USFS considers any potential impacts to be insignificant. Olenhouse Br. at 11-13. Because § 6591a(b) uses the term "categorical exclusion," Plaintiffs contend that it was intended to implicitly include the entire "cluster of ideas" associated with the regulatory use of that term, so that a statutory categorical exclusion must meet the same requirements as 40 C.F.R. § 1508.4. *Id.* at 9-10. Plaintiffs argue that the Hyde Park Project and the Pacheco Canyon Project are part of a broad strategy to change forest conditions across the Greater Santa Fe Fireshed, and that they therefore required analysis of cumulative impacts through a programmatic EIS before authorization. *Id.* at 13. Additionally, Plaintiffs maintain that the USFS failed to consider the extraordinary circumstances raised by potential impacts to

Inventoried Roadless Areas (IRAs) within the project areas, including the effects of treatment on the roadless character of the IRA and its potential for designation as wilderness. *Id.* at 14-16.

Defendants respond that unlike a categorical exclusion promulgated by an agency, the statutory categorical exclusion under § 6591b(a)(1) does not require any extraordinary circumstances review, including consideration of cumulative impacts or IRAs. Resp. at 18-22. Instead, § 6591b(a) contains its own statutory limitations to application of the categorical exclusion. *See* § 6591b(b)-(f). Defendants argue that a project that meets the statutory criteria is excluded from the requirements of NEPA without the need for further review.

The United States District Court for the District of Oregon addressed this issue thoroughly in *Greater Hells Canyon Council v. Stein*, No. 2:17-cv-00843-SU, 2018 WL 3966289, *8-9 (D. Or. June 11, 2018), *adopted*, 2018 WL 3964801 (D. Or. Aug. 17, 2018). The plaintiffs in *Greater Hells Canyon Council* had challenged a fuels reduction project approved by the USFS through a categorical exclusion under the 2014 Farm Bill amendment to the HFRA, just as Plaintiffs do here. *Id.* at *6. The *Greater Hells Canyon Council* plaintiffs argued similarly that the categorical exclusion was inappropriate because extraordinary circumstances existed that required an EA or EIS. *Id.* The District of Oregon Court noted that NEPA regulations required agencies to analyze extraordinary circumstances before applying a categorical exclusion. *Id.* at *7. However, based on plain language and principles of statutory construction, the Oregon Court concluded that § 6591b(a)(1) did not have the same requirements. *Id.* at *8-9; *see also Native Ecosystems Council v. Marten*, 2018 WL 6046472 at *4-5 (rejecting the plaintiff's argument that § 6591a(b) had implicitly adopted the regulatory "cluster of ideas" that required extraordinary circumstances review and following *Greater Hells Canyon Council* to deny the plaintiff's claim).

This Court agrees with the District Courts of Oregon and Montana. Unlike the NEPA regulations that generally govern agency actions, *see* 40 C.F.R. § 1508.4, the plain language of § 6591b does not contain any reference to extraordinary circumstances review. "Courts should 'ordinarily resist reading words or elements into a statute that do not appear on its face.'" *Greater Hells Canyon* Council, 2018 WL 3966289 at *8 (quoting *Dean v. United States*, 556 U.S. 568, 572 (2009)). Additionally, the regulatory requirement for extraordinary circumstances review applies, by its terms, only to actions excluded from NEPA review "under this section[.]" 40 C.F.R. § 1508.4. Further, Congress included in § 6591b other specific limitations on the application of the statutory categorical exclusion, but it chose not to incorporate extraordinary circumstances review. *See* § 6591b(b)-(f). "[T]he enumeration of certain things in a statute suggests that the legislature had no intent of including things not listed or embraced." *Navajo Nation v. Dalley*, 896 F.3d 1196, 1213 (10th Cir. 2018) (internal quotation marks omitted). Finally, Congress did require extraordinary circumstances review for categorical exclusions established by other sections of the HFRA. *See* § 6554(d) (categorically excluding certain silvicultural assessment and research treatments from documentation in an EIS or EA provided that they are first "subject to the extraordinary circumstances procedures established by [40 C.F.R.] 1508.4."); § 6591d(a), (c) (establishing a categorical exclusion for hazardous fuels reduction projects but requiring application of the extraordinary circumstances procedures in 36 C.F.R. 220.6."). "'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Greater Hells Canyon Council*, 2018 WL 3966289 at *8 (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). Consequently, the Court concludes that the USFS was not required to analyze extraordinary

circumstances prior to application of the statutory categorical exclusion to the Hyde Park Project and the Pacheco Canyon Project. The Court will therefore dismiss Plaintiffs' claims as to extraordinary circumstances review, including review of cumulative impacts and of impacts to IRAs.

### 2.       Categorical Exclusion Requirements under the HFRA

Although § 6591b(b)(1) does not require extraordinary circumstances review, to qualify as a categorical exclusion under the HFRA, treatment projects must "maximize[] the retention of old-growth and large trees, as appropriate for the forest type, to the extent that the trees promote stands that are resilient to insects and disease;" and must be based upon a consideration of "the best available scientific information to maintain or restore the ecological integrity, including maintaining or restoring structure, function, composition, and connectivity" of habitats. § 6591b(b)(1). Additionally, the action must be consistent with the forest management plan for the affected area. § 6591b(e). Plaintiffs argue that the Hyde Park Project and the Pacheco Canyon Project violate the HFRA because the USFS did not adequately demonstrate that the projects meet the old-growth management standards in either the HFRA or in the SFNF Forest Plan and did not consider the best available science when evaluating the impacts of treatment on sensitive species or public health.

### a.       Old Growth Management Requirements

Under the SFNF Forest Plan, the USFS project planning should include identification of old growth, with the goal of developing and retaining old growth on at least 20% of the forested area in a landscape. HP002641-002642; PC00308-00309. However, "[t]hinning is permitted in stands being managed for old growth when the result will enhance attainment of the old growth characteristics." HP002642; PC00309. The HFRA similarly requires that a project categorically

excluded from NEPA requirements must retain old growth and large trees to the extent the trees are healthy. § 6591b(b)(1)(A).

Plaintiffs contend that the SFNF Forest Plan requires the USFS to analyze the project areas for existing old growth, and then to develop and retain that old growth, with no treatments in a stand once it has achieved old growth characteristics. Plaintiffs assert that the project areas encompass many trees old enough to be considered old growth, yet the decisions contain no analysis of existing old growth, do not discuss the impacts of treatment on old growth stands, and do not strategize for retaining old growth. Olenhouse Br. at 18-21. Defendants respond that the old growth management standards in the SFNF Forest Plan are simply inapplicable, because the project areas contain no old growth stands. Resp. at 35. However, the projects will retain existing large trees and will encourage the development of old growth characteristics, in compliance with the HFRA. *Id.* at 38.

The SFNF Forest Plan defines the minimum criteria for structural attributes used to determine old growth. PC000310. In the ponderosa pine stands most common in the project areas, there must be at least 20 trees per acre that are 18 inches or greater in diameter at breast height and 180 years old. *Id.* For mixed conifer forest, there must be at least 16 trees per acre that are a minimum of 150 years old and 20 inches in diameter at breast height. *Id.* The USFS concluded that neither the Hyde Park Project nor the Pacheco Canyon Project contain stands that meet these standards. Plaintiffs focus on age and argue that many of the trees are over 180 years old, but they do not refute the USFS conclusions that the vegetation in the project areas does not meet the other SFNF Forest Plan criteria for old growth.

The administrative record shows that the USFS did analyze the vegetation in the project areas, and that it followed the Forest Plan procedures that were applicable to its conclusions that

there was no old growth present. *See* HP002815, PC000482 (describing different categories of vegetation). Both project areas are dominated by crowded stands of densely packed young trees, mostly ponderosa pine. HP003437, HP003442; PC001198-001199, PC001206-001207. In the Hyde Park Project area most of the trees are less than 30 years old, and many have a diameter of less than one inch. HP003437. Although some of the ponderosa are over 180 years old, the Douglas fir and White fir are rarely over 90 years old. HP003438. Even among the ponderosa, only 5-15 trees per acre measure more than 16 inches in diameter at breast height. HP001207. Small diameter trees are also abundant in the Pacheco Canyon Project area. PC001105.

Further, neither the Hyde Park Project nor the Pacheco Canyon Project will involve the cutting of trees that are larger than 16 inches in diameter at breast height unless specific conditions, such as disease, require the removal of a large tree. HP003439-003443, PC001200-001201, PC001204. Accordingly, any healthy trees that do meet the SFNF Forest Plan minimum characteristics for old growth will not be removed during the thinning process. PC001176-1177 (stating that the Pacheco Canyon Project would preserve all existing old growth in the project area). These large trees are also less likely to be damaged by the prescribed fires. HP003443, PC001204. Instead, the Hyde Park Project and the Pacheco Canyon Project will encourage the development of old growth because thinning the crowded stands of young trees will enable the remaining trees to increase their size and health. HP003440, HP003443-003444, HP003446, PC001202, PC001204-001205, PC001207. Although Plaintiffs argue that the USFS did not properly analyze or protect old growth, "[a]s so often is the case in disputes concerning the potential environmental impacts of a project, [Plaintiffs'] claim boils down to a disagreement over scientific opinions and conclusions." *Custer Cty. Action Ass'n v. Garvey*, 256 F.3d 1024, 1036 (10th Cir. 2001). The Court finds that the USFS reasonably determined that the Hyde Park

Project and the Pacheco Canyon Project will retain large trees and maximize the potential for old growth formation in the project areas, as required by the SFNF Forest Plan and the HFRA. HP003528, HP003530; PC001225, PC001241, PC001243.

### b. Consideration of the Best Available Scientific Information

In addition to specific requirements as to old growth and large trees, a forest restoration treatment project categorically excluded from NEPA requirements under the HFRA must consider the best available scientific information regarding ecological integrity. § 6591b(b)(1)(B). Plaintiffs assert that the USFS failed to consider potential adverse impacts to the Northern goshawk and the Abert's squirrel and failed to base the assessment of air pollution impacts from prescribed burning on the best available scientific information. However, Plaintiffs do not cite any statutory provision they believe the USFS violated by these alleged failures. The Court "cannot review agency action 'under APA § 706(2)(A) independent of another statute.'" *Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 140 F.Supp.3d 1123, 1202 (D.N.M. 2015) (quoting *Or. Nat. Res. Council v. Thomas*, 92 F.3d 792, 798 (9th Cir. 1996)). The Court has already concluded that the USFS project decisions did not have to comply with NEPA, and therefore that no EA, EIS, or assessment of potential cumulative impacts was required. The Court will therefore analyze Plaintiffs' claims under the HFRA, since Plaintiffs appear to argue that the USFS did not consider the best available science when evaluating the impacts of proposed treatments on the Northern goshawk, the Abert's squirrel, or the health of the surrounding human population.

### i. Species Concerns

Plaintiffs maintain that the old growth standards in the SFNF Forest Plan are intended at least in part to protect goshawk habitat, but to the extent Plaintiffs may be arguing that the

planned thinning projects will reduce canopy coverage in violation of the SFNF Forest Plan, and consequently in violation of the HFRA, the Court rejects this argument. The SFNF Forest Plan requires an average of at least 40% canopy cover in mid-aged forest, mature forest, and old forest. HP002816. However, the project areas are mostly young forest, to which these guidelines do not apply. HP003442, PC001207. Also, areas that are currently over 40% canopy cover will not be reduced below 40%, and the USFS determined that the result of treatment would be an increase in canopy coverage due to the growth of the remaining trees. HP003443-003446; PC001202, PC001204-001207.

Plaintiffs argue further that "[t]he goshawk canopy closure requirement of 40% is considered by wildlife experts to be a bare minimum[,]" and that greater coverage is required by certain prey species, such as the Abert's squirrel. Plaintiffs contend that the USFS failed to evaluate the potential impacts of treatment on the Abert's squirrel population. Insofar as Plaintiffs are asserting that the USFS violated the HFRA by failing to consider the best available scientific information, the Court disagrees. The Court finds that the USFS rationally determined that the treatments would lead to increased canopy cover, despite the thinning, by allowing the remaining trees to grow larger and increase their crown size. HP003440, HP003443-003444, HP003446; PC001202, PC001204-001207. Additionally, the USFS adequately evaluated management indicator species whose habitat needs allow them to serve as surrogates for the Abert's squirrel. HP003357-003365, HP003448-003453; PC001209-001214. Finally, the project designs put in place conservation measures that will mitigate any potential adverse impacts to the goshawk or its prey species, and the USFS reasonably concluded that the treatments will result in improved habitat for the goshawk. HP003429, HP003441-003446, HP003465, HP003467-003468; PC001205-001207, PC001226, PC001228-001229. Consequently, the Court concludes

that Plaintiffs have not demonstrated that the USFS failed to consider the best available science regarding the goshawk or the Abert's squirrel.

### ii. Public Health

Plaintiffs assert that smoke emissions from prescribed burning pose significant risks to public health, and they argue that the USFS failed to consider the best available scientific information regarding air pollution and the release of toxic substances. As an initial matter, the Court is unsure whether Plaintiffs are attempting to bring this claim under the HFRA, since their requested relief is a programmatic EIS and they do not mention § 6591b(b)(1)(B). Also, the Court doubts that § 6591b(b)(1)(B) would even apply to the public health impacts of smoke emissions, because it requires consideration of the best available scientific information "to maintain or restore the ecological integrity," presumably of the affected forest area. However, the Court will analyze Plaintiffs' claim under the HFRA because the requirements of NEPA do not apply and Plaintiffs have cited no other applicable statute.

Plaintiffs rely almost exclusively on materials outside the administrative records, which the Court will not consider.[6] Plaintiffs cite to the record only to claim, incorrectly, that the USFS made no response to the health concerns Plaintiffs raised during the scoping process, other than to pledge that the projects would comply with air quality standards. *See* HP003533-003534. To the contrary, the administrative records demonstrate that the USFS considered scientific evidence regarding the health effects of smoke emissions from prescribed burning, compared those impacts with the foreseeable health effects of smoke from a wildland fire, and determined that the prescribed burning would likely result in fewer or less serious adverse effects. *See* HP000344-000579 (NWCG Smoke Management Guide for Prescribed and Wildland Fire 2001

---

[6] *See* Memorandum Opinion and Order addressing Defendants' Motion to Strike (Doc. 36), filed contemporaneously with this decision.

Edition addressing "basic control strategies for minimizing the adverse effects of smoke on human health and welfare"); HP002524 (New Mexico Environment Department Air Quality Bureau comment about air pollutant emissions); HP001325-001326 (Response to public concerns with air quality impacts of smoke concluding that expected impacts from a wildland fire were worse than those from a prescribed fire); HP001352 (Anticipated impacts of smoke from prescribed fire).

Additionally, the USFS considered mitigation measures to minimize the adverse effects of smoke, and it committed to employ emissions forecasting technology and precautionary techniques to reduce potential health hazards. *See* HP001341-001343 (Public comment and response addressing smoke impacts and mitigation measures); HP001382 (New Mexico Environment Department comment regarding air quality and smoke management requirements); HP003307, PC001077 (Inventoried Roadless Areas (IRA) Briefing Paper discussing smoke sensitivities and the need to employ mitigation techniques to reduce the impacts of smoke during prescribed burning); HP003500-003502, PC001129-001131 (Response to Plaintiffs' public comment regarding health hazards of smoke stating that prescribed burn emissions will meet all air quality and pollutant regulation standards and that the USFS will use reliable smoke emission forecasting technology, will provide the public with advance notice of prescribed burns, and will mitigate impacts of smoke as much as possible); HP003516-003517, PC001145-001146 (Response to public comment regarding health hazards of smoke stating that prescribed burn emissions will meet all air quality and pollutant regulation standards and that the USFS will provide the public with advance notice of prescribed burns and will mitigate impacts of smoke as much as possible); HP003533-003534, PC001245-001246 (Decision Memos describing precautions that will be taken during prescribed burning to minimize air pollution). The agency

is entitled to rely on scientific studies and pollution reduction techniques it considers valid. *See Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 377 (1989) (courts defer to agency discretion in areas of technical and scientific expertise). Accordingly, the Court concludes that Plaintiffs have not demonstrated that the USFS failed to consider the best scientific information available when analyzing the foreseeable health effects of smoke.

In conclusion, Plaintiffs have not shown a violation of the statutory requirements for categorical exclusion under the HFRA, and the NEPA provisions relied on by Plaintiffs are inapplicable to the USFS decisions that Plaintiffs have challenged. Consequently, Plaintiffs have not demonstrated that the USFS acted arbitrarily, capriciously, or otherwise contrary to law in approving the Hyde Park Project and the Pacheco Canyon Project, and the Court will reject Plaintiffs' challenges to the administrative decisions. Defendants' administrative actions will be affirmed and a final judgment entered by separate order.

_____
SENIOR UNITED STATES DISTRICT JUDGE